MARGARETTA FORT et al., executors, &c., complainants,

*v.*

JOSIE D. FIELD, defendant.

[Decided February 26th, 1923.]

**Sale of Lands—Restrictions in Deeds—How Far They Bind After Reason for Their Inclusion Have Been Removed.**

On bill, &c.

*Mr. Jehiel G. Shipman,* for the complainants.

*Mr. Horace C. Grice,* for the defendant.

FIELDER, V. C.

Complainants are the vendors of lands in the village of South Orange under a written contract of sale wherein defendant is the purchaser. The contract covers more land than is involved in this controversy, defendant having accepted title to a part of the land she contracted to purchase, paying a portion of the purchase price but having refused to take title to the balance thereof on the ground that the title thereto is not marketable, and the bill is filed to compel defendant to specifically perform her contract by taking title to the remainder of the land agreed to be conveyed.

Complainants' title and power to convey come through the last will and testament of former Governor John Franklin Fort, who died November 17th, 1920, seized of all the land described in the contract. His will was duly admitted to probate in Essex county, and it is conceded that complainants can convey a good and marketable title, if the title held by Governor Fort was good.

John G. Vose owned a tract of land two hundred and fifty feet front on the easterly side of Charlton avenue by two

hundred feet deep on the northerly side of Raymond avenue, in which is included the two lots hereinafter called the Jewett lot and the Durbrow lot. The tract two hundred and fifty feet by two hundred feet was conveyed by Vost to Emeline M. Griffen, by deed dated April 10th, 1873, recorded May 13th, 1873, in book T-16 of deeds for Essex county, page 490, by which deed the grantee, for herself, her heirs and assigns, covenanted with Vose, his heirs and assigns, that the land conveyed should not at any time thereafter be used (among other things) "for the erection of any buildings of any kind or description, excepting one dwelling-house with the appropriate gardens, cottage, &c.," designating a number of outbuildings and structures which would be included within the exception, and concluding with the words, "and other buildings and offices appropriate for a gentleman's country residence." The covenant provided that it should attach to the land and run with its title and be inserted in all future conveyances and other instruments whereby the title to the lands conveyed should be transferred or affected and that the covenant should forever thereafter be recognized, sustained and upheld, and that it should be lawful not only for Vosé, his legal representatives or assigns, but also for the owner or owners of any of the property mentioned in the deeds thereinbefore recited (meaning ten deeds by which the land in question and surrounding lands, comprising in the whole a tract of about two hundred and ten acres which had been conveyed to Vose), to institute and prosecute any suit or proceeding at law or in equity for a violation, or threatened violation, of the covenant.

The tract two hundred and fifty feet front by two hundred feet deep, conveyed by Vose to Griffen, was subdivided by subsequent conveyances. Governor Fort acquired title to that portion of it involved in this controversy by two deeds, one from Kate R. Durbrow and husband, dated July 19th, 1915, recorded July 19th, 1915, in book H-56 of deeds for Essex county, page 244, which conveys a plot on the northeast corner of Charlton and Raymond avenues, having a frontage of one hundred and twenty-five feet on the easterly side of

Charlton avenue, by one hundred and eighty-eight and sixty-nine hundredths feet deep on the northerly side of Raymond avenue and the other, for the lot adjoining on the north, from Josephine G. Jewett and husband, dated May 28th, 1914, recorded May 28th, 1914, in book M-54 of deeds for Essex county, page 272, having a frontage of one hundred and eight and thirty hundredths feet on the easterly side of Charlton avenue, by one hundred and ninety-four and twenty-four hundredths feet in depth. The land conveyed by both deeds formed a plot of land with a total frontage of two hundred and thirty-three and three hundredths feet on the easterly side of Charlton avenue, by one hundred and eighty-eight and sixty-nine hundredths feet in depth on its southerly side along Raymond avenue, and one hundred and ninety-four and twenty-four hundredths feet in depth on its northerly side, being but slightly less in area than as originally conveyed by Vose to Griffen.

The deed from Mrs. Durbrow contains a clause that "the lands herein described and conveyed herein are conveyed by express agreements between the parties hereto, subject to building and other restrictions of record affecting the said lands and premises, if any."

The deed from Mrs. Jewett contains a clause that "the party of the second part for himself, his heirs and assigns, hereby covenants and agrees that this conveyance is made subject to the covenants and restrictions set out in the deed recorded in book T-16 of deeds for Essex county, on pages 490, &c., in so far as said covenants and restrictions may, at the present time or hereafter, be operative or valid."

The lot purchased by Governor Fort from Mrs. Jewett was vacant, and immediately after its purchase he commenced the erection of a dwelling-house thereon, which was completed about March, 1915, and in which he thereupon took up his residence and continued to live until his death. When he purchased the adjoining corner lot from Mrs. Durbrow, in July, 1915, there was a dwelling-house on that lot, facing Charlton avenue. Governor Fort moved that house from its foundation to the rear of the Durbrow lot, placing it on

a new foundation facing Raymond avenue, and leaving the old foundation remaining. The present situation with respect to the plot conveyed by Vose to Griffen is that the portion of it acquired by Governor Fort is now occupied by two dwelling-houses and the foundation for a third.

The contract to convey set out in the bill of complaint included the Jewett lot and a portion of the Durbrow lot, with other property. Defendant accepted a deed from complainants for the Jewett lot and such "other property," but refused to accept a deed for the portion of the Durbrow lot covered by the contract, the sole ground for her refusal being that the erection of two dwelling-houses and the foundation for a third, contitute a violation of the covenant contained in the deed from Vose to Griffen restricting the lands therein described to a single dwelling-house and that such covenant will prevent her from erecting a dwelling-house on the corner of Charlton and Raymond avenues.

That the letter of the covenant has been violated must be conceded, but complainants contend that the covenant is a nullity and unenforceable as to the lands in question, because the population of South Orange has greatly increased since the restriction was imposed by the Vose deed in 1873, and the character of the neighborhood has so changed that the original plan or scheme of large country estates which Vose had in mind cannot be carried out, because it would be against public policy and in restraint of trade, considering the increase in population, housing conditions and the change in the character of the neighborhood, now to enforce a restriction limiting the use of a plot of land two hundred and fifty feet by two hundred feet to a single dwelling; because persons deriving title through deeds from Vose have indicated no intention to enforce this restriction and similar restrictions affecting their adjacent property and have acquiesced in and permitted a violation of this particular restriction and of similar restrictions affecting adjacent property and because there has been a general violation of covenants and restrictions similar to the one in question, by those entitled to enforce this covenant and a general acquiescence in such

violation by those concerned, which violation and acquiescence amount to an abandonment and estoppel.

It is alleged in the bill of complaint, admitted by the answer and shown by the evidence, that Vose conveyed various parcels of the two-hundred-and-ten-acre tract, without uniformity as to restrictions governing the number of dwelling-houses to be erected upon the parcels thus conveyed and in many instances without any restriction of such nature; that the owners of lands embraced within the two-hundred-and-ten-acre tract have permitted and acquiesced in many violations by others, of similar restrictions governing the number of dwelling-houses to be erected upon separate plots within said tract and have, themselves, violated such restrictions, and that such building restrictions have been generally ignored by their violation; that Governor Fort violated the restriction in question in 1914 by erecting a dwelling-house on the Jewett lot, and that such violation was permitted and has continued without objection from anyone, although all property owners in the vicinity had ocular notice of his intention to violate it and of his actual and continued violation of it; that since 1873 the population of South Orange has increased from less than two thousand to over seven thousand, and housing conditions in the village are congested; that the village, because of the increased number of inhabitants and the limits of its area is no longer suitable for the ownership of large country estates; that many dwelling-houses have been erected within the two-hundred-and-ten-acre tract and in the immediate neighborhood of the property in question, on lots having a frontage of one hundred feet or less, and that the average frontage of lots within said tract upon which single dwelling-houses are now being erected is one hundred feet.

I conclude that the admitted facts disclose an intent on the part of Vose and those claiming under him, for whose benefit the restrictive covenant in question was made, not to observe the spirit and intent of the covenant and to abandon it, and to generally acquiesce in its violation, and that it would be inequitable, under such conditions and because of the de-

parture from the neighborhood scheme or plan as originally contemplated, to now enforce it, and that such covenant, in so far as it restricts the use of that part of the Durbrow lot which is described in the contract in this suit to the erection of a single dwelling-house, is a nullity, and unenforceable. *Page* v. *Murray, 46 N. J. Eq. 325; Ocean City Assn.* v. *Chalfant, 65 N. J. Eq. 156; Chelsea Land, &c., Co.* v. *Adams, 71 N. J. Eq. 771; Sanford* v. *Keer, 80 N. J. Eq. 240; Fisher* v. *Griffith Realty Co., 88 N. J. Eq. 204.* Defendant's contention that because of the covenant as applied to the number of dwelling-houses to be erected upon the Jewett and Durbrow lots the title tendered to her is not marketable, is without force and she will be decreed to specifically perform her contract.